# George Key, *vs.* James W. Isett, et al.

## *Appeal from Desmoines.*

If A & B promise to enter land for C, and A enters the land in his own name, although B should have advanced half of the purchase money to A, if A tenders to B, his money and executes his trust by conveying to C, then B cannot have a decree against A for half of the land.

This was a bill in chancery, filed by George Key, against James W. Isett and Alexander Marshall, praying that they should be compelled to convey to him the undivided half of eighty acres of land, or account therefor, which he the said Key, charged to have been purchased with the joint funds of himself and said Isett, and sold by Isett to Marshall, with notice of the complainants interest, &c.

The prayer of the petitioner was denied, and a decree entered for the dismissal of the bill ; from which decree, the complainant appealed to this court.

All the essential facts of the case are contained in the opinion of the court affirming the judgment below.

RORER & LEARNED, for complainant.

WHICHER, GRIMES & STARR, for defendants.

PER CURIAM, MASON, CHIEF JUSTICE.—The bill charges, that Isett, in November, 1838, agreed with the complainant to purchase with him jointly, the west half of the south-east quarter of section 11, township 73, north of range 4 west, at the public sale of lands then soon to take place ; that the complainant who was obliged to be absent, was to deposit with Isett one half the minimum price thereof; that the latter was to attend the sale and purchase the land in their joint names and for their equal and joint use and benefit, and should it cost more than $1,25 per acre, that Isett was to advance the necessary means, to be afterwards reimbursed by the complainant.

That the complainant did deposit the money in pursuance of said agreement, but that the defendant fraudulently purchased the land in his own name, with the joint funds of the contracting parties, and that he now refuses to convey the one half thereof to the complainant, although he has proffered to re-pay him one half the excess above the minimum price which was paid for the land.   It then alleges a fraudulent combination with Marshall, the other defendant, and a sale to him with a full knowledge of complainant's rights.

The answer of Isett admits the receipt of the money, but alleged that it was with an agreement and understanding with complainant that the land should be entered for the use and benefit of one Stevens, who then held the land as part of his " claim ;" that Stevens objecting to having Key concerned in the transaction, he Isett, made the purchase in his own name with the purpose of faithfully performing his trust in favor of said Stevens ; that as soon as he saw the complainant he advised him of what had been done, and offered to convey one-half the said land to him if he would obligate himself to convey to Stevens, upon his refunding the purchase money with reasonable interest and compensation for trouble, to which Key objected, and he, Isett, thereupon tendered back $50 in gold, which he, Key, refused to receive.

Many of the most material averments in the answer, are not responsive to the bill, but allege new matter in avoidance.   These require to be supported by proof.   It however inferentially denies the allegation in the bill that the land was to be entered for the use and benefit of Key &

*Isett*, by averring that the agreement was that it should be entered for the use and benefit of Stevens. This is also sufficiently shown by the proof. R. W. Girvin testified in answer to an interrogation from Key, calling for the statements of Isett, that the latter stated the land was to have been entered for the benefit of Stevens, and that he, Key, so understood it.

From the whole current of the testimony, this appears to have been one of those cases so common in this country, where the occupier of land being unable to pay for it himself, was desirous of having it purchased by others who would take the title in their own name, to be transferred upon the re-payment of the principal and such interest as the parties should have agreed upon; that Key & Isett were to have entered the said tract in this manner, perhaps with the expectation that Stevens would never be able to re-pay them.

If such was the understanding of the litigant parties and such the agreement with Stevens there certainly was no resulting trust to Key, as that would be the trust of a trust. Had the title become perfected in Isett, Key would then have been entitled to his share, but the land being redeemed by Stevens, Key is in just as good a situation as though the purchase had been made in the joint names of Key & Isett, for they would then have been in conscience bound to have made the same conveyance as was made by Isett. And all the benefit that Key would have derived from the transaction, would have been a reasonable compensation for his trouble and interest upon his money, if any such was to have been paid by Stevens. But as he had none of the trouble and as no interest was proved to have been paid, all that he seems to have been entitled to from Isett, was the $50, which had been deposited. As this was proved to have been tendered him by Isett, costs were properly awarded against him.

The decree of the court below will therefore be affirmed.